# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### NOVEMBER 1997 SESSION



**FILED**

**December 31, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** ) | **NO. 02C01-9702-CC-00074** |
| ) | |
| Appellee, ) | **HENRY COUNTY** |
| ) | |
| **VS.** ) | **HON. JULIAN P. GUINN,** |
| ) | **JUDGE** |
| **RICHARD CLINT PATTERSON,** ) | |
| **LINDA CAROL GIBBONS, and** ) | (Manufacturing a Controlled |
| **ROBERT LEE WALKER,** ) | Substance, Possession of a |
| ) | Controlled Substance, and |
| Appellants. ) | Possession of Unlawful Drug |
| ) | Paraphernalia) |

**FOR APPELLANT PATTERSON:**

**GUY T. WILKINSON**
District Public Defender

**W. JEFFERY FAGAN**
Assistant District Public Defender
117 North Forrest Avenue
Camden, TN 38320

**FOR APPELLANT GIBBONS:**

**DAVID H. HORNIK**
222 Second Avenue North
Suite 360M
Nashville, TN 37201-1649

**FOR APPELLANT WALKER:**

**N. REESE BAGWELL**
116 South Second Street
Clarksville, TN 37040

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**KENNETH W. RUCKER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**G. ROBERT RADFORD**
District Attorney General

**TODD A. ROSE**
**VICKI S. SNYDER**
Asst. District Attorneys General
P.O. Box 686
Huntingdon, TN 37344-0686

**OPINION FILED:** _____

**GIBBONS: REVERSED AND DISMISSED**
**PATTERSON AND WALKER: MANUFACTURING AND POSSESSION OF ROCK**
  **COCAINE CONVICTIONS REVERSED AND REMANDED; AFFIRMED IN**
  **ALL OTHER RESPECTS**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendants, Richard Clint Patterson, Linda Carol Gibbons[1] and Robert Lee Walker, were convicted by a Henry County jury of one (1) count of manufacturing rock cocaine, one (1) count of simple possession of rock cocaine, one (1) count of simple possession of powder cocaine and one (1) count of possession of unlawful drug paraphernalia. Patterson was also convicted of one (1) count of simple possession of marijuana. On appeal, defendants raise several common issues for our review:

> (1) whether the trial court erred in denying their respective motions to suppress;
>
> (2) whether the trial court erred in refusing to charge the jury on the "personal use exception" to manufacturing a controlled substance; and
>
> (3) whether the evidence is sufficient to sustain the convictions.

Gibbons and Walker further raise the issues of: (1) whether the trial court erred in admitting into evidence a weapon found in Walker's vehicle, and (2) whether the trial court erred in affirming the fines imposed by the jury. Walker also claims that the trial court erred in failing to grant his motion to dismiss on the basis of his mental incapacity to stand trial. Furthermore, Patterson claims that the trial court erred in not granting a mistrial after the prosecution made an improper remark during closing argument.

Because we find that the trial court improperly refused to charge the jury on the "personal use exception" to manufacturing a controlled substance, Patterson's and Walker's convictions for manufacturing rock cocaine and simple possession of rock cocaine are reversed and remanded for a new trial. All of Gibbons' convictions are reversed and dismissed due to the illegal entry into her residence. In all other respects, the judgment of the trial court is affirmed.

---

[1] Defendant Gibbons was indicted under the name of "Linda Faye Gibbons." However, the indictment was subsequently amended to reflect that defendant's name is "Linda Carol Gibbons."

**STATEMENT OF THE FACTS**

On May 17, 1995, Paris police officer Gregory Underwood was dispatched to 807 Joy Street in Paris to investigate an assault. When he arrived at 5:59 a.m., Gibbons was standing outside of the house. The officer went inside with Gibbons and found Patterson and Walker there. Both claimed that they had been in an altercation with a black male, who had taken $100 from them. Although both men had a substantial amount of blood on them, neither wanted to file a complaint. Officer Underwood left the residence around 6:30 a.m.

While he was driving to work that morning, Henry County Sheriff's Department Patrolman Donnie Archie heard a radio transmission concerning the assault at 807 Joy Street. During the transmission, Archie learned that Patterson and Walker were present at the residence.

Shortly after arriving at work, Archie's supervisor handed him two arrest warrants for Walker and asked him to serve the warrants. Knowing where Walker could be located at that time, Archie formulated a plan along with Officer Underwood, Sergeant Donnie Blackwell with the Paris Police Department, and other law enforcement officers to serve the arrest warrants on Walker at 807 Joy Street.

When they arrived at the residence, Archie and Blackwell knocked on the door and announced that they had arrest warrants for Walker. Gibbons came to the door and said that she had to get dressed. Blackwell asked her again to open the door, and when she refused, he forced entry into the home by kicking in the door. Gibbons was standing in the hallway fully clothed. The officers found Walker in a bedroom and proceeded to take him into custody. During this time, the officers noticed a burning torch on the dresser, along with spoons containing what appeared to be cocaine.

Incident to his arrest, Walker was searched. The officers found a wallet containing $9,384 in cash and a check payable to Walker for $300.

The officers then secured the premises while Sergeant Blackwell obtained a search warrant. As a result of the search of the residence, the officers

3

confiscated a torch, a crackpipe and pushrod, spoons containing residue, syringes, triple beam scales, an inhaler, a Tupperware bowl containing powder, a bowl with a scouring pad, a gravy ladle containing residue, a bag of powder substance appearing to be cocaine, glass jars with nylon strainers containing a milky residue, a bottle cap containing residue, a "stash can," and a "stash book."[2] The officers also recovered a lunch box containing a toothbrush, bowls, a pocket knife, a razor blade, pipes, a pill bottle containing residue, and a lighter. One of the officers found a 9mm automatic weapon in a vehicle parked in the carport.

During the search Patterson was located in the attic of the home, where the officers also found a propane strike lighter, a pair of hemostats, a bag of plant material, a lighter and a soft drink can made into a pipe.

Many of the substances seized by the officers were tested by the Tennessee Bureau of Investigation's Crime Lab. The bag of plant material found in the attic was tested and determined to be 1.6 grams of marijuana. The glass jars contained a residue which tested to be cocaine. The bottle cap contained a residue which was determined to be 0.9 grams of rock cocaine. The powder substance in the bag was determined to be 1.7 grams of powder cocaine. The residue on a spoon was found to be 0.4 grams of rock cocaine, and the residue on the gravy ladle was determined to be 1.8 grams of cocaine. The Tupperware bowl contained 179.1 grams of baking soda.[3]

Subsequently, the officers learned that the arrest warrants for Walker had been satisfied previously. They further determined that the house was rented to defendant Gibbons.

The defendants were indicted on one (1) count of manufacturing rock cocaine over 0.5 grams, one (1) count of possession with the intent to sell or deliver rock cocaine over 0.5 grams, one (1) count of possession with the intent to sell or deliver powder cocaine over 0.5 grams, one (1) count of possession of marijuana and one (1) count of possession of unlawful drug paraphernalia. The jury found all

---

[2] Archie described the "stash book" as a book with the center of the pages cut out.

[3] Several witnesses testified that sodium bicarbonate (baking soda) is used in converting powder cocaine into rock cocaine.

defendants guilty of manufacturing rock cocaine over 0.5 grams and possession of unlawful drug paraphernalia. The jury found all defendants not guilty on both counts charging possession with the intent to sell or deliver cocaine, but found all defendants guilty of the lesser included offense of simple possession of cocaine on both counts. Patterson was convicted on the simple possession of marijuana count, and Gibbons and Walker were acquitted of that offense.

The trial court sentenced all defendants to concurrent sentences of eight (8) years for manufacturing and eleven (11) months and twenty-nine (29) days for each conviction for possession. The trial court affirmed the fines imposed by the jury of $50,000 for the manufacturing convictions and $2,000 for each count of possession. The trial court denied alternative sentencing for Patterson and Walker, but ordered that Gibbons be placed on community corrections after she served one (1) year in confinement. From these convictions and sentences, defendants bring this appeal.

## FAILURE TO TIMELY FILE MOTION FOR NEW TRIAL - WALKER

As a preliminary matter, the state contends that many of the issues raised by Walker are waived due to his failure to timely file his motion for new trial. Therefore, the state claims that appellate review is limited to those issues relating to the sufficiency of the evidence and sentencing.

A motion for a new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. Tenn. R. Crim. P. 45(b); *see also* State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Unlike the untimely filing of the notice of appeal, this Court does not have the authority to waive the untimely filing of a motion for new trial. *See* Tenn. R. App. P. 4(a). The sentencing order in this case was entered on August 19, 1996. Walker filed his motion for new trial on September 19, 1996. Therefore, Walker's motion for new trial was untimely filed, and Walker has waived his right to appeal any issues raised in the motion for new trial, except sufficiency

of the evidence and sentencing. *See* State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980).

However, this Court, in its discretion, may take notice of an error which affects a substantial right of the defendant where it may be necessary to do substantial justice. Tenn. R. Crim. P. 52(b). Because we find that the erroneous jury instructions on the manufacturing charge affect Walker's substantial rights, we will address that issue. All other issues not relating to the sufficiency of the evidence or sentencing are deemed waived. *See* State v. Martin, 940 S.W.2d at 569; State v. Dodson, 780 S.W.2d at 780.

Walker has, therefore, waived the issues regarding the admissibility of the weapon and his competency to stand trial as we find no plain error. We have, nevertheless, reviewed the record as to these issues and have found each to be without merit. We also decline to find plain error regarding the motion to suppress and consider it waived. This issue is more fully discussed under the heading Motion to Suppress, *infra*.

## MOTION TO SUPPRESS

Defendants challenge the trial court's denial of the motion to suppress the evidence seized as a result of the officers' initial entry into the residence. They claim that, pursuant to Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the officers were required to obtain a search warrant in order to enter Gibbons' residence to arrest Walker. They assert that the subsequent search warrant was tainted as "fruit of the poisonous tree"; thus, the evidence seized pursuant to that search warrant should have been suppressed.

### A. Procedural History

This issue presents a classic procedural nightmare. The defendants submitted the motion to suppress to the trial court as a question of law regarding the legality of the search of Gibbons' residence. No oral testimony was heard. Each party submitted a written memorandum of law. The parties stipulated that they

would adopt "the facts <u>as found and developed</u> in both the preliminary hearing had in the General Sessions Court and the confiscatory proceedings that were had when certain personalty was seized." (emphasis added).

In its written order denying the defendants' motion to suppress, the trial court noted that the parties did not submit an agreed statement of the facts, upon which the trial court was to base its decision.[4]  However, the trial court found that the relevant facts were undisputed.  We further note that, although the parties agreed that the trial court would rely upon the facts found at the preliminary hearings and the confiscation proceedings, there were no such findings at any of the proceedings that are contained in the record before us.  Nevertheless, the trial court made findings of fact in its order, presumably based upon the varying versions of the facts provided by the parties and its review of the transcripts of the subject proceedings.

The trial court found that, although the arrest warrants had been previously satisfied, the warrants were facially valid and the officers did not act in bad faith in executing them.  The court concluded that the search warrant was not invalid merely because it was issued based upon information obtained during the execution of an invalid warrant.  Although standing was contested by the state in its memorandum, the trial court did not address this issue.

## B. Patterson

We begin our analysis with Patterson's argument in favor of suppression of the evidence.  However, all of Patterson's citations to the record in support of his position refer to trial testimony.  Because the motion to suppress was handled prior to trial, evidence adduced at the subsequent trial is irrelevant to our review of the trial court's determination on the motion to suppress.  Therefore, Patterson did not make appropriate references to the record for effective appellate review.  Failure to make appropriate references to the record results in waiver of the issue.  Tenn. Crim. App. Rule 10(b); <u>State v. Turner</u>, 919 S.W.2d 346, 358 (Tenn. Crim. App. 1995); <u>State v. Hill</u>, 875 S.W.2d 278, 283-84 (Tenn. Crim. App. 1993); <u>State v.</u>

---

[4] Defendant Walker's memorandum refers to a "Stipulation of Facts" filed with the court.  However, no such document exists in the record before this Court.

<u>Killebrew</u>, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988); *see also* Tenn. R. App. P. 27(a)(7) and (g). This failure is particularly crucial in this case since Patterson had to establish standing to contest the search.[5] We find no reference to the record which establishes his standing. This issue is waived.

## C. Gibbons

We now address the merits of the issue as to defendant Gibbons. In support of her argument, Gibbons relies upon <u>Steagald v. United States</u>, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).[6] In <u>Steagald</u>, the Supreme Court held that, absent consent or exigent circumstances, law enforcement officers can not seek the subject of an arrest warrant in the home of a third person without first obtaining a search warrant. <u>Id</u>. In making its determination, the Court noted the differing interests protected by an arrest warrant and a search warrant:

> An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

---

[5] We again note that, in its memorandum, the state contested both Walker's and Patterson's standing to challenge the search of Gibbons' home. The issue of standing was not addressed by the defendants. When seeking to suppress evidence seized pursuant to a search warrant, a defendant has the burden of proving that he or she had a "legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized." <u>State v. Transou</u>, 928 S.W.2d 949, 957 (Tenn. Crim. App. 1996). Our examination of the transcripts from the preliminary hearings and the confiscation proceeding indicates that neither Patterson nor Walker has established a legitimate expectation of privacy in Gibbons' home. The defendants' mere presence at the residence is not enough to establish an expectation of privacy. *See* <u>Transou</u>, 928 S.W.2d at 957-58. There is no showing that they resided on the premises or were overnight guests. *See* <u>Minnesota v. Olson</u>, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). A "casual visitor" or a "transient party guest" does not have a reasonable expectation of privacy in the host's residence. <u>Transou</u>, 928 S.W.2d at 958 (citing <u>United States v. Dix</u>, 57 F.3d 1071 (6th Cir. 1995)). Accordingly, it appears that neither defendant has standing to contest the search of Gibbons' home, although Walker would have standing to contest the seizure of the money and check from his person. Gibbons has standing to contest the search as she resided on the premises.

[6] We do not find plain error in denying Walker's motion to suppress. Walker's reliance on <u>Steagald</u> is misplaced. <u>Steagald</u> concerned the <u>rights of the residential owner</u>, not the arrested person. The Court's holding was narrowed to determine "whether an arrest warrant - as opposed to a search warrant - is adequate to protect the Fourth Amendment interests of persons <u>not named in the warrant</u>, when their homes are searched without their consent and in the absence of exigent circumstances." 451 U.S. at 212, 101 S.Ct. at 1648 (emphasis added).

451 U.S. at 212-213, 101 S.Ct. at 1648. While the arrest warrant protects an arrestee from an unreasonable seizure by the government, the occupant of the residence is afforded no protection against an unreasonable invasion and search of his or her home. 451 U.S. at 213, 101 S.Ct. at 1648. Accordingly, the Fourth Amendment mandates that the police obtain a search warrant to execute an arrest warrant in the home of a third person.

In the case *sub judice*, the officers clearly had an obligation to obtain a search warrant in order to arrest Walker in Gibbons' home. The state argues that the record "contains absolutely no suggestion that the officers did not believe that Walker resided at 807 Joy Street. Thus, a separate search warrant was unnecessary since the home appeared to be the residence of [Walker]." We disagree. In the transcript of the preliminary hearing for Patterson and Gibbons, defense counsel asked Sergeant Blackwell:

Q      And you had information at that point that Robert
       Walker was living there also, is that correct?

A      Had information that he was there.

Furthermore, Walker's address as listed on the warrant was not 807 Joy Street. We, therefore, decline to accept the state's suggestion that there was no need for a search warrant to enter Gibbons' residence.

Because there is no evidence of consent or exigent circumstances, the officers made an improper warrantless entry into Gibbons' home. Therefore, as to Gibbons, the subsequent search warrant was invalid as it relied upon information obtained as a result of the illegal entry into her residence. Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); State v. Clark, 844 S.W.2d 597, 600 (Tenn. 1992). Accordingly, the trial court erred in denying Gibbons' motion to suppress. Gibbons' convictions must be reversed and dismissed as the only evidence supporting the charges against her was obtained in violation of the Fourth Amendment.

Even though Gibbons' convictions are reversed and dismissed, we will still address her remaining issues to facilitate possible Supreme Court review. *See* State v. Woodcock, 922 S.W.2d 904, 912 (Tenn. Crim. App. 1995).

9

## JURY CHARGE ON MANUFACTURING

### A.

All of the defendants contend that the trial court erred in its charge to the jury on the offense of manufacturing a controlled substance. They correctly maintain that production of a controlled substance for one's personal use is expressly excluded from the statutory definition of "manufacturing." They argue that, by excluding the personal use exception to the definition of "manufacturing," the charge did not fully and fairly state the applicable law. Therefore, they maintain that the trial court's refusal to charge the jury on the "personal use exception" constituted reversible error. We must agree.

### B.

It is the trial court's duty to give a complete charge of the law applicable to the facts of the case. State v. Belser, 945 S.W.2d 776, 789 (Tenn. Crim. App. 1996); State v. Howard, 926 S.W.2d 579, 585 (Tenn. Crim. App. 1996). The defendant has a right to have "every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge." State v. Brown, 836 S.W.2d 530, 553 (Tenn. 1992) (citations omitted).

### C.

The defendants were charged with manufacturing a controlled substance; to wit: cocaine. Tenn. Code Ann. § 39-17-417(a)(1), (c)(1). "Manufacturing" is defined as:

> the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that "manufacture" does not include the preparation or compounding of a controlled substance by an individual for the individual's own use . . .

Tenn. Code Ann. § 39-17-402(14) (emphasis added). Manufacturing for one's personal use does not constitute the offense of "manufacturing" as contemplated by the statute as it is expressly exempted from the definition of "manufacturing." State v. Valentine, 911 S.W.2d 328, 333 (Tenn. 1995). The legislative intent of this

10

statutory definition was not to legalize the production of a controlled substance for one's personal use; however, the production of a controlled substance for one's personal use would constitute the misdemeanor offense of simple possession under Tenn. Code Ann. § 39-17-418(a).

The defendants requested that the trial court charge the jury as to the "personal use exception" to manufacturing. Unfortunately, the discussion concerning the charge to the jury occurred off the record. However, an examination of the transcript at the Motion for New Trial hearing reveals that the trial court did not believe that personal use was fairly raised by the proof presented at trial.

**D.**

The state argues that the record supports the trial court's conclusion that the "personal use exception" was not properly raised by the evidence; therefore, the trial court was not required to include the exception in the charge. *See* State v. Leaphart, 673 S.W.2d 870, 873 (Tenn. Crim. App. 1983). To the contrary, an examination of the jury verdict unquestionably indicates that the jury well could have inferred that the cocaine was manufactured for the defendants' own use, rather than for distribution, in that all defendants were acquitted of both counts of possession with the intent to sell or deliver cocaine. These acquittals by the jury leave this Court with no choice but to find that personal use was fairly raised by the evidence.

We find that the "personal use exception" was fairly raised by the proof at trial, and the trial court's failure to charge it left the jury with little choice but to convict. *See* State v. Stoddard, 909 S.W.2d 454, 460 (Tenn. Crim. App. 1994). Therefore, the convictions of Patterson and Walker for manufacturing rock cocaine are reversed and remanded to the trial court for a new trial. Although Walker's motion for new trial was untimely filed, this error affected his right to a fair trial. We, therefore, find plain error.[7] Tenn. R. Crim. P. 52(b).

**E.**

We note that the defendants were convicted of both manufacturing rock

_____

[7] A failure to find plain error in this instance would certainly create a meritorious ineffective assistance of counsel claim due to defense counsel's failure to timely file the motion for new trial.

11

cocaine in Count One and simple possession of rock cocaine in Count Two, the latter being charged as a lesser offense of possession with the intent to sell or deliver rock cocaine. The indictment makes no distinction as to which rock cocaine is charged in each count. As previously stated, we believe the legislative intent is to classify the production of cocaine for one's personal use as the misdemeanor offense of simple possession. One may not "manufacture" a controlled substance without necessarily possessing it. State v. Layne, 623 S.W.2d 629, 638 (Tenn. Crim. App. 1981), *overruled on other grounds*, State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984);[8] *see* Tenn. Code Ann. §§ 39-17-402(14), 39-17-418. Therefore, simple possession of rock cocaine is a lesser offense of manufacturing rock cocaine.

## F.

Having determined that simple possession of rock cocaine is a lesser offense of manufacturing rock cocaine, we are confronted with an interesting issue not addressed by the parties; namely, the failure to merge the simple possession conviction into the manufacturing conviction. We conclude the trial court should have merged these two convictions, even though they were submitted to the jury in different counts. *See* State v. Banes, 874 S.W.2d 73, 80-81 (Tenn. Crim. App. 1993); Raybin, *Tennessee Criminal Practice and Procedure* § 16.20 (1984). Under the facts of this case, it would also appear the jury should have been instructed that simple possession of rock cocaine was a lesser offense of manufacturing rock cocaine under Count One. The jury was erroneously instructed that the defendants could be convicted of both manufacturing rock cocaine and simple possession of rock cocaine.

The significance of this issue is apparent in determining its effect upon the remand for retrial. This Court has found reversible error with regard to the manufacturing jury charge. Patterson and Walker must be retried under Count One

---

[8] The Court in Holt overruled Layne to the extent that Layne held that a defendant may not be convicted of both manufacturing and possession with the intent to sell. The Court's holding did not imply that simple possession was not a lesser included offense of manufacturing.

for manufacturing rock cocaine. Furthermore, the offense of simple possession of rock cocaine should be charged as a possible lesser offense under Count One. The conviction under Count Two of simple possession of rock cocaine must be set aside. These defendants may not be retried for possession with the intent to sell or deliver rock cocaine under Count Two as they were acquitted by the jury of this offense.

In conclusion, we set aside the convictions for (a) manufacturing rock cocaine in Count One, and (b) simple possession of rock cocaine as a lesser offense of possession with the intent to sell or deliver rock cocaine in Count Two. Defendants may be retried only as to Count One charging manufacturing rock cocaine with its lesser offense of simple possession of rock cocaine.[9]

## SUFFICIENCY OF THE EVIDENCE

All of the defendants contend that the evidence is insufficient to sustain their respective convictions. Each defendant argues that the state did not prove that he or she either actually or constructively possessed the drugs and the paraphernalia. They claim that their mere presence at the residence would not, by itself, support the convictions for possession. Moreover, because the state did not prove possession of either the drugs or paraphernalia, they assert that the evidence is insufficient to sustain the manufacturing convictions.

**A.**

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements

---

[9] The only other alternative is to allow the simple possession conviction in Count Two to stand and not give the new jury the option of this lesser offense. If the jury then convicted of manufacturing rock cocaine, the Count Two simple possession conviction would have to be set aside. This alternative does not seem fair or appropriate.

of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Although the evidence of the defendants' guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988).

Great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. Id.; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

**B.**

In addition to the manufacturing convictions, the defendants were convicted of two (2) counts of possession of cocaine and one (1) count of possession of drug paraphernalia. Tenn. Code Ann. §§ 39-17-418(a), 39-17-425(a)(1). Possession can be either actual or constructive. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Before a person can be found to constructively possess a drug, it must appear that the person has 'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" Cooper, 736 S.W.2d at 129 (citations omitted). Mere presence in the area where the drugs are discovered is not enough, standing alone, to support a conviction for

14

possession. <u>State v. Transou</u>, 928 S.W.2d at 956.

While we agree that mere presence is not enough to sustain the convictions for possession, we find that there is sufficient evidence in the record for the jury to conclude that each defendant constructively possessed the cocaine and drug paraphernalia.

**C.**

Furthermore, notwithstanding our previous determination of an inadequate jury charge on manufacturing, we find adequate proof in the record to sustain the manufacturing convictions. The officers discovered a burning propane torch in the bedroom. There was testimony at trial that much of the paraphernalia found was used in converting powder cocaine into rock cocaine. Additionally, some of the cocaine was found during its chemical conversion into rock form.

After a thorough review of the record, we find that the evidence is sufficient to sustain the jury's findings of guilt on all convictions.[10] This issue is without merit.

**ADMISSIBILITY OF WEAPON**

Gibbons asserts that the trial court erred in admitting into evidence an unloaded weapon that was recovered from Walker's vehicle parked outside of the residence.[11] She claims that the gun was irrelevant to any issue presented to the jury. Furthermore, she claims that even if the weapon was relevant to the issues, the prejudicial effect of admitting the evidence outweighed any probative value it might have.

This Court has recently held that the presence of firearms was circumstantial evidence tending to establish that the defendant possessed drugs with the intent to sell. <u>State v. Willie J. Houston</u>, C.C.A. No. 02C01-9604-CR-00135 (Tenn. Crim.

---

[10] It is unclear whether Patterson is contesting his conviction for possession of marijuana. If so, we find this issue to be meritless as the evidence is sufficient to sustain the jury's finding. We also note that Patterson conceded his guilt on this count to the jury during closing.

[11] As previously stated, Walker has waived this issue by the failure to timely file his motion for new trial.

App. filed May 23, 1997, at Jackson). However, this Court based that holding on the particular facts of the case. In that case, the police recovered three (3) loaded weapons which were found within reach of the defendant at the time he was taken into custody by the officers. This Court concluded that the jury could infer that the defendant possessed the weapons in order to prevent someone from taking his drugs and any money received as proceeds from illegal drug sales.

In the case *sub judice*, the weapon was found in Walker's vehicle outside of Gibbons' residence. Further, the gun was unloaded. Therefore, the <u>Houston</u> case is distinguishable.

We find that the gun was irrelevant to the issues presented to the jury, especially as it would relate to Gibbons. *See* Tenn. R. Evid. 401. Consequently, the trial court erred in admitting the weapon into evidence.

Nevertheless, we find no prejudice by its admission. The state presented the weapon as a tool of the drug trade to prove the intention to sell or deliver the controlled substances. Indeed, all defendants were acquitted of the possession with the intent to sell or deliver counts. The error was harmless. Tenn. R. Crim. P. 52(a).


## FINES


In their next assignment of error, Gibbons and Walker argue that the trial court erred in affirming the fines imposed by the jury. They challenge their ability to pay the fines. Therefore, they contend that the fines are unreasonable and should be reduced.

For each defendant, the jury assessed a fine of $50,000 for the conviction for manufacturing rock cocaine over 0.5 grams. The jury also assessed a fine of $2,000 for each count of simple possession of cocaine and possession of drug paraphernalia. Patterson received a fine of $2,000 for his conviction for simple possession of marijuana.

This Court has the authority to review fines pursuant to the 1989 Sentencing

16

Act. State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991). The defendant's ability to pay the fine is a factor to be considered along with other factors involved in determining the total sentence. Id. However, the defendant's ability to pay the fine is not necessarily a controlling factor. State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). A substantial fine may be punitive in the same manner that incarceration may be punitive. Id.

In its determination of sentencing, the trial court noted the defendants' prior criminal history involving the use of illegal drugs. The trial court also focused on the seriousness of the offenses involved. Although the court found that enhancement factors existed for both defendants, neither defendant's sentence was enhanced above the statutory minimum. We find that the trial court properly considered the sentencing principles and all relevant facts and circumstances. The trial court properly affirmed the fines imposed by the jury.

This issue is without merit.

## IMPROPER REMARKS BY PROSECUTOR - PATTERSON

In the final assignment of error, Patterson claims that the trial court erred in denying a mistrial after the prosecutor referred to the jury as the "conscience of the community" during closing argument. He maintains that, due to the circumstantial nature of the evidence presented, the remarks by the prosecutor were highly prejudicial. Therefore, he contends that the trial court should have granted a mistrial.

During closing argument, the Assistant District Attorney made the following statements:

> And as the members of this jury and the conscience of this community, I know it is serious to you. And I ask that you when you deliberate in this case that you look in your heart and that you see the evidence for what it is and not escape what it is, that each of you find these Defendants guilty of every count embraced in the indictment that the Grand Jury has delivered. I ask you to find each and every one of them guilty. Thank you.

Defense counsel objected out of the presence of the jury and requested that the

court declare a mistrial. The trial court found that the argument was not improper and overruled the objection.

Counsel for the state and the defense are allowed wide latitude in arguing their cases to the jury. State v. Bigbee, 885 S.W.2d 797, 809 (Tenn. 1994). "The bounds of proper argument are established in large part by the facts in evidence, the character of the trial, and the conduct of opposing counsel." State v. Seay, 945 S.W.2d 755, 763 (Tenn. Crim. App. 1996).

An appeal to the jury to act as the community's conscience is not necessarily improper argument. See State v. Seay, 945 S.W.2d at 763-64; State v. Terrance B. Pulliam, C.C.A. No. 02C01-9507-CR-00206 (Tenn. Crim. App. filed October 22, 1996, at Jackson); State v. Johnnie Lamont Dalton, C.C.A. No. 01C01-9408-CR-00291 (Tenn. Crim. App. filed July 11, 1995, at Nashville); State v. Mark Weems, C.C.A. No. 89-276-III (Tenn. Crim. App. filed April 19, 1990, at Nashville).

Moreover, this was an isolated incident, and the prosecutor does not appear to be arguing deterrence in his "conscience of the community" statement. In the context of the overall argument, the prosecutor's statement was not improper. In any event, Patterson has not demonstrated how he was prejudiced by the argument. Any error was harmless, at best. Tenn. R. Crim. P. 52(a).

This issue is without merit.

## CONCLUSION

All convictions of Gibbons are reversed and dismissed. The convictions of Patterson and Walker for manufacturing rock cocaine in Count One and simple possession of rock cocaine in Count Two are reversed and remanded for a new trial. Upon retrial, the trial court shall submit manufacturing rock cocaine as charged in Count One with simple possession of rock cocaine as its lesser offense. The judgment of the trial court is affirmed in all other respects.

                                                   **JOE G. RILEY, JUDGE**

**CONCUR:**

**GARY R. WADE, JUDGE**

**DAVID G. HAYES, JUDGE**