# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 15, 2009 at Knoxville

## STATE OF TENNESSEE v. KENNETH RAY KILPATRICK

**Appeal from the Circuit Court for Wayne County**
**No. 14457     Robert L. Jones, Judge**

---

**No. M2009-00559-CCA-R3-CD - Filed January 21, 2010**

---

The defendant, Kenneth Ray Kilpatrick, appeals from his Wayne County Circuit Court jury conviction of simple possession of a Schedule IV controlled substance, a Class A misdemeanor. He claims on appeal that the evidence convicting him was legally insufficient. We disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Claudia S. Jack, District Public Defender; and Robert H. Stovall, Jr., Assistant Public Defender, for the appellant, Kenneth Ray Kilpatrick.

Robert E. Cooper, Jr., Attorney General & Reporter; Leslie E. Price, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Joel Douglas Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At trial, Sergeant Jason Davis with the Wayne County Sheriff's Office testified that at approximately 7:00 p.m. on April 23, 2008, he saw the defendant driving his car without his seatbelt engaged and that, consequently, he stopped the defendant. The officer testified that, after he reported to the sheriff's department that the driver of the detained vehicle had declined to get out of the car when asked to do so, the department advised him to wait for additional officers. Apparently, although not detailed by the witness, the defendant drove away from the officer, and the resulting police chase terminated in the defendant's wrecking his car. Subsequently, Sergeant Davis searched the car and found a bottle in the driver's side floor that contained 22 tablets of Darvocet, a Schedule IV

controlled substance. He also found approximately $300 in cash, a pouch containing plastic "baggies," two plastic spoons, and a small butane torch. Sergeant Davis testified that he had seen plastic "baggies" of the type found in the defendant's car used previously to package illegal drugs and that a torch of the type found was used to liquefy drugs.

Sergeant Davis testified that he also found drug paraphernalia in the purse of the defendant's wife, a passenger in his car. The paraphernalia included spoons, a wire brush for cleaning pipes, a small metal fork-spoon combination used for measuring drugs, and a mirror with razor cuts on it.

On cross-examination, Sergeant Davis testified that the visible letters on the label of the Darvocet pill bottle were "D-e-r-e." The remainder of the label was marred, but the label did reflect that the prescription for Darvocet had been filled on April 16, 2008.

The defendant testified in his own behalf that on April 23, 2008, he and his wife were test-driving a vehicle after picking it up in Hohenwald from a "guy they call Stone Cold." He admitted that he had lied to the investigating officer when he told the officer that the car came from a man named "Lynch." He testified he had been in the car about 30 minutes when Sergeant Davis pulled him over. The defendant testified that he was wearing his seatbelt with the shoulder strap behind him prior to the officer's stopping him. He testified that he declined to get out of the vehicle when the officer asked him to do so because a lawyer had told him not to get out of his car if he were stopped. He testified that after he had sat on the roadside for about 25 minutes, he became anxious about what was happening, especially after several other police cars began arriving. He testified that, at this point, he "thought they was going to beat [his] ass," prompting him to drive away. He crossed into Perry County, lost control of the car on a curve, and wrecked.

The defendant testified that the pill bottle found in the car belonged to Derek McCann, the defendant's wife's cousin, with whom the defendant had gone fishing earlier in the day.

On cross-examination, the defendant testified that Stone Cold's real name is Tony Staggs. He testified that, after he drove away from the officers in Wayne County, he intended to stop when he saw Perry County police, adding that he had "heard a lot of bad things about Wayne County police." He testified that Sergeant Davis had his driver's license and his wife's identification and opined that the officer "could have come to [the defendant's] house and arrested [him]."

On re-direct examination and re-cross examination, the defendant admitted that, a "couple of weeks" prior to his arrest, he had tried smoking methamphetamine. He admitted that he had smoked some marijuana earlier in the day on April 23, 2008.

Carrie Kilpatrick, the defendant's wife of 27 years, testified that on April 23, 2008, she was riding with the defendant while he test-drove a car. She testified that they were stopped by an officer who referred to a seatbelt violation and that the defendant gave the officer his license and the car registration papers. She testified that the officer came back to the car and asked for and obtained her own identification card. She testified that other officers began arriving and that the defendant did not understand what was happening. She stated, "[T]he longer we set [sic] there, the nervouser [sic] we got."

Ms. Kilpatrick testified that the yellow spoon found in her purse was a "Tweety Bird" spoon and that she collected "Tweety" items. She also testified that the baggies were used to package jewelry that her mother sold at flea markets. She testified that the butane torch lighter was given to her by her friend Miranda to light lanterns at the river. She further stated that the Darvocet pill bottle belonged to Derek McCann.

On cross-examination, she testified that Stone Cold's car had been sitting at her mother's house for three weeks. When asked about her possession of the spoons, she testified that she not only collected "Tweety" items but that she also collected all kinds of spoons. She added that she had "a Tweety tattoo on [her] leg."[1]

Miranda Haggard testified that the defendant and his wife were her best friends. She testified that she bought the butane torch lighter found in the vehicle on April 23. She testified that she bought the lighter for 99 cents in Savannah on April 20. She gave it to the Kilpatricks "so they could light their torches, 'cause I was scared that they were going to blow themselves up, the way they were lighting their lanterns underneath."

Derek McCann testified that Carrie Kilpatrick is his cousin and that the bottle of Darvocet pills that had been introduced into evidence belonged to him. He testified that he was "down at the campground. And we was going to go fishing. I left [the pill bottle] in a camper." The camper belonged to the Kilpatricks and sat near the river. He testified that after he returned from fishing, he left the bottle in the camper because his mother had called about 6:00 p.m. to tell him to come home to take care of an emergency. He testified that he was prescribed the Darvocet along with antibiotics for an ear infection and that he had taken seven or eight of the pills.

---

[1] At this point, the prosecutor said, "I must have missed the episode where Tweety smokes a crack pipe." The trial court sustained an objection and instructed the jury to disregard the comment.

The jury convicted the defendant of simple possession of a Schedule IV controlled substance. On appeal, he argues that the evidence belies the jury's conclusion that he possessed the bottle of Darvocet.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id*.

"It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." T.C.A. § 39-17-418(a).

Tennessee courts recognize that possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Id.* at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing *Cooper*, 736 S.W.2d at 129). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129.

-4-

In the present case, the defendant presented evidence that the Schedule IV substance – Darvocet – in his possession on April 23 was the property of Derek McCann. In so doing, he invoked the "valid prescription" exception to the simple possession statute, Tennessee Code Annotated section 39-17-418(a). The "valid prescription" language of section -418(a) has indeed been deemed an "exception" as defined in Tennessee Code Annotated section 39-11-202, *see State v. Timothy Wayne Grimes*, No. M2001-01460-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Nashville, Oct. 16, 2002); *State v. Cecil U. Cobb, Jr.*, No. 03C01-9811-CR-00420, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 2, 1999), and as such, "the state need not negate the existence of an exception in the charge alleging commission of the offense." T.C.A. § 39-11-202(b)(1); *see also id*., § 39-17-427 ("It is an exception . . . if the person lawfully possessed the controlled substance as otherwise authorized."); *id.* § 53-11-410 ("It is not necessary for the state to negate any exemption or exception in . . . title 39, chapter 17, part 4 . . . . The burden of proof of any exemption or exception is upon the person claiming it."). The prescription exception is applicable "when the prescription is issued by a licensed practitioner, acting in good faith and in accord with accepted medical standards and when the person obtaining the prescription is also acting in good faith and is free from fraud, deceit or misrepresentation." *State v. Sanderson*, 550 S.W.2d 236, 239 (Tenn. 1977).

In the present case, the defendant made no showing other than through the testimony of Mr. McCann that Mr. McCann held a valid prescription for the Darvocet. No pharmaceutical or medical testimony or records were introduced, and in our view the jury was free to reject Mr. McCann's testimony. On this point, we note that part of the label on the pill battle had been scratched away.

Having determined that the exception contained in the proscriptive statute was not established, we hold that the evidence otherwise established the defendant's knowing, constructive possession of a Schedule IV controlled substance. Even if Mr. McCann left the Darvocet in a camper at the river as he claimed, the presence of the Darvocet in the car the defendant was driving when he was stopped by Sergeant Davis was not explained. The bottle of Darvocet was found in the floor of the driver's side of the vehicle that the defendant was driving. Someone had scratched off part of the prescribee's name on the bottle label. The officers also found items in the wife's purse in the vehicle that reasonably suggested the use of drugs. The defendant admitted to the use of illicit drugs, including the use of marijuana earlier in the day of April 23, 2008.

We hold that these facts provided a basis for inferences that the defendant unlawfully and knowingly possessed the Darvocet. Thus, the conviction is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE