IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2005

## STATE OF TENNESSEE v. PETER ALEXANDER GRAVES

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR20-2004     William B. Acree, Jr., Judge**

---

**No. W2004-01525-CCA-R3-CD  - Filed July 19, 2005**

---

This is a direct appeal as of right from a conviction on a jury verdict of possession of .5 grams or more of cocaine with intent to sell or deliver, and possession of not less than one-half ounce nor more than ten pounds of marijuana with intent to sell or deliver.  The trial court sentenced the Defendant as a Range II, multiple offender to fifteen years for the cocaine conviction and three years for the marijuana conviction, to be served concurrently in the Tennessee Department of Correction (TDOC). The Defendant argues two issues on appeal: 1) the evidence was insufficient to find him guilty on both charges, and 2) the trial court erred in imposing an excessive sentence.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Joseph P. Atnip, District Public Defender, Dresden, Tennessee, for the appellant, Peter Alexander Graves.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In October of 2003, the Defendant, Peter Graves, was arrested in Martin, Tennessee, on an outstanding warrant for probation violation.  The arresting officers discovered marijuana in the Defendant's automobile in a search incident to the arrest.  The police also witnessed the Defendant throw a bag of cocaine to the ground, and saw the Defendant appear to throw an object under the

automobile. When the Defendant's car was towed away, a bag of marijuana was discovered on the ground where the car had been parked. In January of 2004, the Defendant was indicted by a Weakley County grand jury on two drug related charges: 1) possession of .5 grams or more of a Schedule III controlled substance (cocaine) with intent to manufacture, deliver or sell, and 2) possession of not less than half an ounce nor more than ten pounds of a Schedule VI controlled substance (marijuana) with intent to sell or deliver. See Tenn. Code Ann. § 39-17-417. A jury trial was conducted in April of 2004.

At trial, Officer Jason Arant of the Martin Police Department testified that he and Investigator Randall Walker were in a patrol car the afternoon of October 17, 2003, when the Defendant drove by them. Officer Arant recognized the Defendant, and he suspected the Defendant had an outstanding warrant. After contacting the police dispatcher, who confirmed that the Defendant was indeed wanted for probation violation, Officer Arant and Investigator Walker began looking for the Defendant, whom they quickly found nearby. The two officers observed what "appeared to be the same vehicle" they witnessed the Defendant driving just minutes earlier, parked on the side of a dead-end road, facing the wrong direction. As the officers approached the car, they observed that the driver's side door was open, there was a juvenile sitting in the front seat on the passenger side, the Defendant was sitting in the middle of the front seat, and an unidentified woman was seated near the driver's seat either very close to the Defendant or partially on his lap.

As Officer Arant approached the vehicle, the woman exited and walked into a nearby house. The Defendant also exited the vehicle, but as he did he "made a gesture" in which his shoulder dipped, which Officer Arant believed indicated the Defendant "was throwing something under the vehicle." As Officer Arant was attempting to place the Defendant into handcuffs, the Defendant "put his left hand into his left pocket and brought it back out . . . and transfer[ed] [an] object from his left hand to his right hand, and thr[ew] it down on the ground." After the Defendant was secured, Officer Arant retrieved the object he witnessed the Defendant drop, which he discovered to be a plastic bag containing rocks of crack cocaine, each individually packaged in other plastic bags.

Officer Arrant also testified that in a search incident to the Defendant's arrest, he and Investigator Walker found two bags of marijuana in the car, one under the front seat and one in the glove box, and $520 on the Defendant's person. Additionally, as the car was towed away, another bag of marijuana was discovered on the ground where the vehicle had been parked. On cross-examination, Officer Arant stated he believed the juvenile, who was under observation the entire time, never had an opportunity to dispose of the marijuana found under the car, but conceded the woman may have. Officer Arant also stated that the juvenile passenger was released after he was questioned and searched, and the unidentified woman was never questioned.

The vehicle the Defendant was in at the time of his arrest was not properly registered. However, Officer Arant testified that the person whose name it was still titled under had relinquished all ownership of the vehicle, and the new owner failed to register it. Officer Arant also testified that

the Defendant told him he had paid $100 for the car. The license plate on the vehicle was registered to the Defendant's brother, Chet Graves. No one had claimed the vehicle as of the date of the trial.

Investigator Randall Walker testified that he also saw the Defendant drive by in the same vehicle in which he was eventually found, and that the unidentified woman who was sitting in his lap left the car and walked into a house when he arrived at the scene. Jessica Webb of the Tennessee Bureau of Investigation Forensic Chemistry Section was certified by the trial court as an expert witness in the area of forensic science. Ms. Webb testified that the illegal substances submitted to her lab were determined to be 1.1 grams of cocaine and 43.1 grams of marijuana.

The Defendant's testimony at trial varied from the testimony of the police officers on several key points.[1] The Defendant denied that he drove by the officers in a car before his arrest. He testified that the vehicle he was in at the time of his arrest did not belong to him. The Defendant claimed that the cash found in his pocket was from his girlfriend and was for their rent. He denied that he threw anything on the ground. The Defendant also stated that the woman, whom he did not know, did not walk into a house, but rather drove off in a car with other people. The Defendant also insisted there were "six police cars" at the scene when he was arrested,[2] and that officer Arant lied when he testified that he saw the Defendant throw the cocaine on the ground. According to the Defendant's testimony, he was in his mother's boyfriend's house when the unidentified woman asked him to come sit by her in the car. He did not know whose vehicle it was, or who had been driving it because it was parked when he came out of the house. The Defendant stated he had just sat down in the car when the police arrived. The Defendant further testified that he believed the woman must have dropped the drugs found on the ground. At the conclusion of the trial, the jury returned a verdict of guilty as charged on both counts.

A sentencing hearing was conducted in May of 2004, at which the Defendant testified that there were no weapons or any violence involved in the crime, but admitted he had several prior drug convictions. The trial court determined that the Defendant was a Range II, multiple offender and sentenced him to fifteen years for the Class B felony cocaine possession conviction and three years for the Class E felony marijuana possession conviction, to be served concurrently. The Defendant filed a motion for a new trial, which was denied following an evidentiary hearing in June of 2004. The Defendant timely filed a notice of appeal.

**ANALYSIS**

The Defendant now argues that there was insufficient evidence to convict him of the crimes of possession with intent to sell cocaine and marijuana, and requests that this Court reverse and dismiss, or remand the case for a new trial. However, should the convictions stand, the Defendant

---

[1]The Defendant had originally elected not to testify, but during the Momon examination changed his mind and, against the advice of his counsel, took the stand.

[2]Officer Arant testified that there were no more than two police cars at the scene of the arrest.

also argues that the trial court imposed excessive sentences for his two convictions, and requests his sentence be reduced to twelve years.

## I.  Insufficient Evidence

The Defendant's first issue on appeal is whether there was sufficient evidence for any rational trier of fact to find beyond a reasonable doubt that he was guilty of the two drug related crimes for which he was convicted.  The Defendant agues that he was not found in direct possession of any controlled substance, and his mere "proximity" to the drugs found on the ground or in a car that did not belong to him is insufficient to find he had constructive possession.

### A.  Standard of Review

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt.  See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom.  See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599.  A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory.  See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).  Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence.  See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659.  Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact.  See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

### B. Possession with Intent

In order to convict the Defendant of the Class B felony cocaine charge, the State was required to prove beyond a reasonable doubt that the Defendant: 1) knowingly possessed a substance containing cocaine, 2) with the intent to sell or deliver, and 3) the amount was .5 grams or more.  See Tenn. Code Ann. § 39-17-417(a)(4) and (c)(1).  For the Class E felony marijuana conviction, the State bore the burden of proving the Defendant: 1) knowingly possessed marijuana, 2) with intent to sell or distribute, and 3) the amount of marijuana was not less than one-half once (14.175 grams) nor more than ten pounds (4,535 grams).  See Tenn. Code Ann. § 39-17-417(a)(4) and (g)(1).  The Defendant

has not challenged whether the substances found were cocaine and marijuana, nor whether the weight of the illegal substances met the elements of the crimes for which he was charged. It is unclear whether the Defendant challenges the jury's conclusion that the drugs were possessed with the intent to sell or distribute. The only issue clearly challenged in the Defendant's appellate brief is whether there was sufficient evidence to conclude the Defendant possessed the illegal substances discovered at the scene of his arrest.

Tennessee courts have recognized that possession may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citing State v. Patterson 966 S.W.2d 435, 444-45 (Tenn. Crim. App. 1997)). Constructive possession is essentially "the ability to reduce an object to actual possession." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Constructive possession occurs when a person has "the power and intention at a given time to exercise dominion and control over [the drugs] either directly or through others." Shaw, 37 S.W.3d at 903 (quoting Patterson, 966 S.W.2d at 445). However, "[o]ne's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." Shaw, 37 S.W.3d at 903 (citing Patterson, 966 S.W.2d at 445; Cooper, 736 S.W.2d at 129); see also State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000).

Additionally, "circumstantial evidence alone may be sufficient to support a conviction." Bigsby, 40 S.W.3d at 90. However, for a conviction based solely on circumstantial evidence to stand, such evidence "must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt." Id. Furthermore, "'it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime.'" Id. (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).

In determining whether the possession of a controlled substance was intended for sale, this Court looks to the entirety of the circumstances surrounding the arrest. We have previously determined that a large amount of cash found in conjunction with cocaine amounted to sufficient evidence of intent to sell. See State v. Logan, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998). We have also found that possession of a large amount of drugs and the absence of any drug paraphernalia or apparatus indicative of personal use is sufficient to convict for possession of a controlled substance with intent to sell or deliver. See State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (holding that 1.7 grams of crack cocaine was a sufficiently large amount to infer intent to sell). Moreover, the law expressly allows a jury to infer intent to sell based on the amount of the controlled substance possessed and the "relevant facts" surrounding the arrest. See Tenn. Code Ann. § 39-17-419.[3]

---

[3]"It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419.

In our view, the evidence presented at trial, viewed in the light most favorable to the State, was legally sufficient to support the Defendant's convictions for both possession of cocaine and possession of marijuana with intent to deliver. Officer Arant testified that he saw the Defendant drive by in a vehicle, and minutes later found the Defendant in "what appeared to be the same vehicle." Officer Arant witnessed the Defendant throw a bag on the ground, which was later determined to contain a total of 1.1 grams of cocaine further wrapped in individual packages. Officer Arant also testified that he observed the Defendant appear to throw something under the car, and a bag containing marijuana was later found on the ground where the car was parked. Also, Officer Arant and Investigator Walker testified that two other packages of marijuana were found in the car. While the car was not properly registered, the Defendant was seen driving the car moments before he was found by police sitting in the same car. The Defendant made a statement to Officer Arant that he had paid $100 for the car at some point, and the license plate affixed to the car was registered to a relative of the Defendant.

Based on this evidence a jury could have rationally concluded that the car in which marijuana was discovered belonged to the Defendant. A jury could have further concluded from the testimony presented that the Defendant had direct possession of the cocaine he pulled from his pocket and dropped on the ground, and constructive possession of the marijuana found in and under the car. The jury could further rationally conclude, based on the cash found on the Defendant, the amount of the drugs, and the fact that the drugs were individually packaged, that the Defendant intended to sell or distribute the illegal substances. Accordingly, we find the evidence presented to the jury was sufficient to support both of the Defendant's convictions. This issue has no merit.

## II. Sentencing

The Defendant also argues that he received an excessive sentence. Specifically, the Defendant argues that the trial court erroneously applied one enhancement factor in violation of his Sixth Amendment right to trial by jury, and failed to apply one mitigation factor. Therefore, the Defendant asserts, his effective sentence of fifteen years was excessive, and should be reduced to twelve years.

In calculating a sentence for a Class B or E felony conviction, the "presumptive sentence . . . shall be the minimum sentence in the range if there are no enhancement or mitigating factors." Tenn. Code Ann. § 40-35-210(c). If there are enhancement, but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. See Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors for a Class B or E felony requires the court to start at the minimum, next assign the proper weight for any applicable enhancement factor(s), and finally apply a reduction within the range as appropriate for any mitigating factor(s). See Tenn. Code Ann. § 40-35-210(e). The sentence for a Class B felony as a Range II, multiple offender is "not less than twelve (12) nor more than twenty (20) years." Tenn. Code Ann. § 40-35-112(b)(2). The sentence for a Class E felony in the same range is "not less than two (2) nor more than four (4) years." Tenn. Code Ann. § 40-35-112(b)(5). Therefore, the Defendant's presumptive sentence for his Class B felony conviction for possession of cocaine with intent is the minimum in the range, or twelve years, and the Defendant's presumptive sentence for his Class E

felony conviction for possession of marijuana with intent is also the minimum in the range, or two years.

### A. Standard of Review

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

### B. Blakely Violation

The Defendant first argues that the trial court erred by enhancing his sentence based upon its finding of fact that he had "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(9). The Defendant argues that his Sixth Amendment right to a trial by jury was impugned when the trial court made determinations of fact for sentence enhancement purposes that were not submitted to a jury or admitted by him, citing Blakely v. Washington, 124. S.Ct. 2531 (2004). However, our supreme court has recently held that the enhancement component of Tennessee's sentencing structure does not violate a defendant's Sixth Amendment right to a trial by jury. See State v. Gomez, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848 (Tenn., Nashville, April 15, 2005). Therefore, the

Defendant's claim of a Sixth Amendment right violation based on the trial court's enhancement of his sentence is without merit.[4]

### C. Mitigation Factor

In the Defendant's final issue, he argues that the trial court erred by adopting a "blanket policy" of not applying mitigation factor number one, that the Defendant's "criminal conduct neither caused nor threatened serious bodily injury," to his drug conviction sentences. Tenn. Code Ann. 40-35-113(1). While it is true that a trial court cannot refuse per se to consider mitigation factor one in cases involving a conviction for possession of cocaine, see State v. Ross, 49 S.W.3d 833, 848-49 (Tenn. 2001), neither is this mitigation factor afforded special significance in such cases. See id. at 849.

The Ross case is further distinguishable in that in the case at hand, the trial court did not adopt a per se exclusion of the mitigation factor; the Defendant's cocaine possession conviction was based on actual possession, not constructive possession; and the evidence in this case, unlike that in Ross, clearly indicates the Defendant intended to sell the cocaine. Therefore, mitigation factor one is entitled to little weight, and the trial court did not err in electing not to reduce the Defendant's sentence based on this factor. See State v. Jeremy Sheron Hall, No. E2003-02946-CCA-R3-CD, 2005 WL 428292, at *12-13 (Tenn. Crim. App., Knoxville, Feb. 24, 2005); State v. Michael Andrae Holman, No. M2002-01471-CCA-R3-CD, 2003 WL 21713422, *6-7 (Tenn. Crim. App., Nashville, July 23, 2003). Furthermore, we note that even if the trial court's refusal to apply mitigation factor one was error, we would find it harmless error. The Defendant's prior criminal history as well as his record of unwillingness to comply with conditions of a sentence involving community release sufficiently support his effective fifteen year sentence. Accordingly, this issue is without merit.

### CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court as to both the Defendant's convictions and sentences.

_____
DAVID H. WELLES, JUDGE

---

[4]We note that the Defendant does not otherwise challenge the applicability of the enhancement factor to his sentences.